### GILMER *v.* MORRIS and others.

*(Circuit Court, M. D. Alabama.* November Term, 1886.)

JUDGMENT—RES ADJUDICATA—DISMISSAL ON DEMURRER.

Plaintiff filed a bill in a state court which, in effect, asked that he be allowed to redeem certain stock pledged by him with the defendant, a banker, in 1871. On demurrer to the bill, the court sustained the plea that the statute of limitations had run against it, and gave decree "that complainant is not entitled to relief, and that his bill of complaint be, and the same is hereby, dismissed out of this court." In the present suit plaintiff asked for an accounting and for general relief, and set out that he had pledged the stock in 1871; that in that year part of the stock was sold, leaving a small balance due defendant; that in 1875, having formed a partnership, he arranged with defendant that the stock should be retained by him to secure loans and discounts to his firm as well as the balance of the original debt; that such arrangement was renewed as to successive firms of which the plaintiff was a partner; that large dividends were received upon the stock; and that from 1875 to 1884 defendant continuously held, and acknowledged that he held, the stock as a pledge on plaintiff's account. *Held,* that the plaintiff, having merely failed in the first action from the omission of an essential allegation, which was supplied in the second suit, the dismissal was not a trial upon the merits, and did not operate as *res adjudicata,* and that plaintiff was entitled to maintain his action.

In Equity. Heard upon the allowance of defendants' plea.

*R. C. Brickell, H. C. Semple,* and *W. A. Gunter,* for complainant.

*D. S. Troy, H. C. Tompkins,* and *A. T. London,* for defendants.

BRUCE, J. The bill was filed September 20, 1886, and sets out a pledge as collateral security, in the year 1871, of 120 shares of stock in the Elyton Land Company, by plaintiff, to Josiah Morris, to secure to him the repayment of the sum of $6,000, which sum Morris had advanced for the purchase money of said stock; that, in the year 1871, one-half of said stock was sold for the sum of $6,000, leaving a small amount of interest due to Morris, and that, in the year 1875, orator formed a partnership with one Donaldson; and desiring, as he charges in his bill, "to continue his bank account with said Josiah Morris & Co., and to obtain from them, from time to time, some accommodations by way of loans and discounts, arranged and agreed, in the early part of the year 1875, with said Morris, that the said stock should be held by him, not only to secure such balance as was due him on the original purchase thereof, but also for all indebtedness which the said firm of Gilmer & Donaldson might incur to him, or to his banking firm, * * * and afterwards, and in pursuance of said agreement, and up to the death of said Donaldson, in 1876, the bank account of said Gilmer & Donaldson was opened and continued, * * * and loans and discounts were made to them from time to time. * * *" Orator says that after the death of Donaldson he formed other business partnerships, and that during the course of said dealings, under the name of Gilmer & Clanton, and Gilmer & Merritt, the said Morris, through his said bank, as he had done for many years for all of orator's previous firms, extended credits and made loans of money to said firms, from time to time, upon the

faith and credit of said stock belonging to orator in his hands as a pledge as aforesaid; but orator's two firms last mentioned left no balances against them in closing their accounts with said Morris' bank.

The complainant states that large dividends have been paid to Josiah Morris on this stock; and, without stating in detail the further allegation of the bill, the averment is that "Morris continuously, from the month of March, 1875, to the year 1884, did hold and acknowledged that he held said stock as a pledge on orator's account, and to secure the payment of the said balances due him and his said bank." The prayer of the bill is that the defendant Josiah Morris may be compelled by a decree of this court to account for and pay over to orator all such dividends as may have been paid upon said stock since the same has been in his hands as aforesaid, after deducting any and all indebtedness on the part of orator to Morris and his said firm for which the stock is liable, and for general relief.

To this bill the defendants plead in bar, and say that on the seventh day of July, 1884, the plaintiff, James N. Gilmer, exhibited his bill of complaint in the chancery court of the Sixth district of the Southern division of the state of Alabama against these defendants, alleging his ownership of the identical 60 shares of stock in the Elyton Land Company described in the present bill in this court, and praying in that court the same relief as is prayed in the bill in this court; that in that suit the defendants answered the bill, and also answered an amended bill which was filed by the plaintiff in that case in the state court; and that at the April term, 1885, of that court, the cause was submitted on the pleadings and testimony on the merits thereof; and that by the decree of the chancellor, a copy of which is made a part of the plea, "it is ordered, adjudged, and decreed that complainant is not entitled to relief, and that his bill of complaint be dismissed out of this court." * * * And that afterwards, on appeal, at the December term, 1885, the decree of the court below was affirmed by the supreme court of the state of Alabama. They thereupon plead said proceedings in bar of this action, and say the matters set up in this bill have been heard and determined by a court of competent jurisdiction, and pray to be dismissed, with their costs.

It is admitted that the state chancery court which rendered the decree pleaded in bar of the present suit is a court of competent jurisdiction, and that it had jurisdiction of the parties and the subject-matter of the suit; that the parties in this suit are the same as in the former suit; that the thing sought to be recovered in this suit, to-wit, 60 shares of stock in the Elyton Land Company, is the same thing which was sought to be recovered in the former suit; but the contention of the plaintiff is that the cause of action in this suit was not the cause of action in the former suit, and that it could not have been so, because the cause of action in this was not within the issues made and determined in the former suit.

Plaintiff contends that the allegations of the present bill are not the allegations of the bill in the state court; that the cause of action is neither in substance nor in fact the same cause of action, and that upon the

present bill he has not had the one hearing and trial on the merits of his case which the law gives to every litigant. In the discussion of this question, what are we to understand by the words "cause of action?" They seem, in some cases, to be used as synonymous with the thing or demand in suit, or the subject-matter of the suit. We speak of a suit on a promissory note or contract, and in some sense the demand in suit is the cause of action; but, strictly speaking, is a promissory note the cause of the suit upon it, or is it not rather the mere evidence of a right which right is the real cause of the action? A cause of action springs out of facts which show a breach of some duty or obligation, to enforce which is the purpose of a suit, either at law or in equity; the cause of the action is the right which the party has to the thing which is the subject-matter of the suit, and not merely the thing itself. The distinction between the subject-matter of a suit and the cause of action is maintained in Freeman on Judgments, §§ 252–256, and seems to be well founded. The bill in the state court was filed on the seventh day of July, 1884, which was subsequent to all the alleged acknowledgments of the pledge by Morris, as charged in the present bill, which was filed on the twentieth day of September, 1886; and the proposition of the plea is that, as to the stock in suit, the complainant is concluded by the judgment of the state court, not only as to the questions which were actually passed upon by the court in that suit, but equally as to those questions which might have been passed upon and decided in that court.

It is to be observed that, with the answer filed by Morris to the bill in the state court, there was also, under the practice in equity in this state, a demurrer to the bill on the grounds (1) that the facts alleged show that the demand is stale, and barred by the statute of limitations; (2) the complainant has an adequate remedy at law.

In the opinion of the chancellor of the state court, filed as an exhibit to the plea, he says: "The statute of limitation, therefore, is a bar to the rights of the complainant in this cause;" and the decree is "that complainant is not entitled to relief, and that his bill of complaint be, and the same is hereby, dismissed out of this court." The ruling and judgment of the state court on the former suit is thus shown to have been, upon demurrer to the bill, that the averments thereof did not make a case for relief. The proposition of the plea is that under the law as it has been settled, the statute of limitations of the state furnishes the rule of property in the United States courts sitting in such states, and, the state court having passed upon the question of the right of property of the stock sued for, that the rule of *res judicata* applies, and the bar is complete. But did the state court in this case, when it held that the complainant had not in his bill stated a case for relief, and dismissed the bill out of court, pass upon the question of the right of property to the stock other than as it was shown by the averments of the bill in that case? The state court said, in effect, by its decree, that complainant has not in his bill stated a cause of equity; and when it said that, could it say more, and determine a cause of action which was not set up or stated in the bill?

What is the rule of *res judicata?* It is thus stated in *Russell* v. *Place,* 94 U. S. 608:

"It is settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties."

In *McCall* v. *Jones,* 72 Ala. 371, the court says:

"The rule of *res adjudicata,* or former recovery, is confined to those cases where the parties to the two suits are the same, the identical point is directly in issue, and the judgment has been rendered in the first suit on that point."

And again, in the same case, the court says it is not only essential that the issue or point in question must either have been actually decided or necessarily involved in the first case; but the first judgment, sought to be pleaded in bar in the second suit, will not be available as a defense unless it was a judgment on the merits of the case; citing authorities.

An indefinite list of authorities might be cited to the same effect, but I will only add here Bigelow on Estoppel, at page 75, where he says:

"The peculiarity of the plea of former judgment consists, therefore, in the fact that it shows that a certain claim or demand has already been tried and determined. To this end it must be shown that there is identity between the present and the previous cause of action. The question, then, to be decided, is whether the two causes of action are the same. If they are not identical, the defense is not good."

Now, can it be maintained, in the light of the law as stated in the authorities cited, that the question of the right of the complainant to redeem from the pledge of 1871 was the same question presented to the court in the case at bar, which is the right to redeem the same property, it is true, but from a pledge made in 1875, upon a distinct agreement creating a distinct trust from the pledge of 1871, and an alleged continued acknowledgment of the trust relations between the parties down to a recent period prior to the filing of the bill? And, again, can it be held that the merits of the case presented to the state court are the merits of the case at bar, and that the same evidence pertinent to support the bill in the case at bar would have been pertinent to support the bill in the state court? The proposition of the plea seems to go to this extent: that a plaintiff, filing a bill or complaint in court to enforce the right which he claims to the subject-matter of his suit, must state, in his pleading, every ground and cause of action upon which he bases his right to recover; and if he does not do so, and is met by a demurrer, upon which the court decrees the plaintiff does not show any right to relief, and dismisses the bill or complaint, that such judgment is a bar, not only to a second suit stating the same cause of action, but equally a bar to any bill or complaint which the plaintiff might file upon any other possible ground or theory of his right to recover.

Is that the law, and do the adjudged cases carry the rule of *res judicata* to that extent?

The case of *Durant* v. *Essex Co.,* 7 Wall. 107, is relied on to support this plea. It was there held that "a decree dismissing a bill in an equity

suit in the circuit court of the United States, which is absolute in its terms, unless made on some ground which does not go to the merits, is a final determination of the controversy, and constitutes a bar to any further litigation of the same subject between the same parties;" but that is not the case of the dismissal of a bill upon demurrer for want of equity, but after testimony was taken on both sides, and the case was heard on its merits, and argued by counsel. See page 110 of this opinion.

The defendants rely upon the case of *House* v. *Mullen*, 22 Wall. 42, where the court, at page 47, say: "As the record stands, this decree might be pleaded successfully as a bar to any other bill brought by Eliza House, or by Mary Hunter, her child, in assertion of her right to this lot, though we are of the opinion that the only defect in the bill is that it shows no interest in Mary Hunter, while it does show a good cause for equitable relief on the part of Eliza House." The court would naturally presume that Eliza House had stated her case in her bill, and the court would not affirm a decree that would bar her right to the lot in question; meaning, of course, her right as shown by her bill; and the question as to whether she might not have some other ground or cause of action as to the property, was not in the mind of the court, and the question we are considering was not before the court.

The case of *Aurora City* v. *West*, 7 Wall. 83, is relied on in support of the plea, and there the rule is thus stated:

"Except in special cases, the plea of *res judicata*, says Taylor, applies not only to points upon which the court was actually required to pass an opinion and pronounce judgment, but to every point which properly belongs to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time."

This rule evidently applies to cases where there has been a trial upon defined issues, and in such cases, when a party fails to present proof to sustain his case upon the issues made, he cannot afterwards be allowed to avoid the rule on the ground that he did not do that which he had the full opportunity to do. In that case, on same page, the court limits the rule of *res judicata* to matter in the second suit which "was open to the party within the legitimate scope of the pleadings in the first suit, and might have been presented in that trial." Many other cases are cited in support of the plea, which are more or less in point; but it may be fairly questioned if any of them go to the extent of this plea, though some of them, in expressions used in the opinions, but not on questions actually decided, would seem to go to that extent. These cases seem to make no distinction between the subject-matter of the suit and the cause of the action,—a distinction which seems to be well maintained, and which seems logically to result from the doctrine which is fundamental in *res judicata*, that the judgment of the court, in order to be a bar to a second suit, must have been upon the same question, either actually decided, or necessarily involved, and within the scope of the issues in the first suit.

Is it not sometimes the case that the matter in controversy may be based upon different grounds or causes of action; and is it sound in

principle to say that when a party presents his case to a court on one ground and theory of his right to recover, if it should appear that he was mistaken, he should be visited with the penalty of a conclusive bar to any and every ground of relief?

It is said in *Tompson* v. *National Bank*, 106 Mass. 128, that a plaintiff in a bill in equity is not concluded on demurrer by his allegations of law; and it would seem to be a severe rule that a plaintiff should be visited with such fatal consequences, if he should be mistaken in the theory of law upon which he should file his bill. The law seeks the merits of a cause, rather than to put a party on any calculation of chances for and against the successful assertion of his legal rights. It may be said that, in such a case, a complainant may amend, and state other and different grounds of relief.

But does not his right to amend imply his right, at his option, to state a new case in another bill or complaint? If the complainant had amended his bill in the state court, and stated a case for relief, and the defendant had answered, and the plaintiff replied, if the answer contained matter for replication, and a trial had then been had upon issues thus tendered and joined, the judgment of the court would be conclusive, not only as to the questions actually and necessarily passed upon by the court, but also upon the questions which might properly have been passed upon under the issues made and tendered in the pleadings? This statement of the rule is as far as the adjudged cases carry it, and under its operation the merits of a cause could generally be reached; at least, the parties would have opportunity to present the merits; but, in a case like the one the judgment in which is pleaded here in bar, how can the judgment be a bar to any other cause of action than the one stated in the bill before the court? It may be said, generally, that a party in bringing his suit has a right to state his case as he will. A complainant in equity determines what shall be the scope of his bill, and what matter he will present for issue to his adversary; and it is not speculating or experimenting not to state matter which, upon some other or different theory of his cause, might be ground of another action.

In support of these views and the rule as stated *supra*, the following cases are cited: *Gould* v. *Evansville R. Co.*, 91 U. S. 534; *Packet Co.* v. *Sickles*, 5 Wall. 592; *McDonald* v. *Life Ins. Co.*, 65 Ala. 358; *Gilman* v. *Rives*, 10 Pet. 301; *Griffin* v. *Seymour*, 15 Iowa, 32; *Bonnifield* v. *Price*, 1 Wyo. 223; *Los Angelos* v. *Mellus*, 59 Cal. 444; *Stowell* v. *Chamberlain*, 60 N. Y. 275; *Pritchard* v. *Woodruff*, 36 Ark. 196; 1 Herm. Estop. §§ 133, 155.

In Bigelow on Estoppel, pp. 50, 51, it is said a judgment rendered on the ground of insufficiency of plaintiff's declaration, or dismissing a bill in chancery for insufficiency, is not a bar to another suit, and a line of authorities are cited, among which are *Thomas* v. *Hite*, 5 B. Mon. 590; *Morrell* v. *Morgan*, 65 Cal. 575, 4 Pac. Rep. 580; and some of the cases cited *supra*. It may be said, however, that in some of these cases the judgment was held to be no bar on what might be called special grounds, as in one case for want of proper parties  Others of them are

up to the proposition stated, though the author, like other elementary writers, gives the rule as found in the adjudged cases, when they are, perhaps, not in harmony with one another.

Among the many cases cited by the complainant in support of the bill, the case of *Gould* v. *Evansville R. R.*, *supra*, seems to have particular application here; not that it is like the case at bar in its facts, but the court states the rule in that case, both as to when a prior judgment of a court is a bar to a second suit and when it is not; and, at page 534, says, "that, if judgment is rendered for the defendant on demurrer to the declaration, or to a material pleading in chief, the plaintiff can never after maintain against the same defendant, or privies, any similar or concurrent action, for the same cause, upon the same grounds as were disclosed in the first declaration, for the reason that the judgment upon such demurrer determines the merits of the cause, and a final judgment deciding the right must put an end to the dispute, else the litigation would be endless; but it is equally well settled that, if the plaintiff fails on demurrer in his first action, from the omission of an essential allegation in his declaration, which is fully supplied in the second suit, the judgment in the first suit is no bar to the second suit, though the respective actions were instituted to enforce the same right; for the reason that the merits of the case, as disclosed in the second declaration, were not heard and decided in the first action;" citing authorities.

The court in that case sustained the plea upon the ground that the substance and legal effect of the two pleadings—that is, the declaration in the first and the second suit—were the same in all material respects, and that the alleged differences were unsubstantial. We have, however, the rule stated with as much clearness as in any of the cases cited; and, while the case which the court was considering fell within the rule of *res judicata*, does not the case at bar fall within the other part of the rule: that the judgment in the first suit is a bar only to the case stated, and the merits disclosed in the declaration in the first suit? Certainly it is so, unless it should be held, as it was in that case, that the two suits, as disclosed in the respective bills filed in the state and in this court, are the same, and that the differences alleged in the two pleadings are nominal and unsubstantial.

The remaining question, then, is, are the two cases the same? By what rule or test shall the question be determined? The substance of the bill in the case at bar has been stated with some particularity, and attention must be given to the amendments that were made to the bill in the state court after it was filed, not only to what was by amendment added to the first paragraph of the bill, but also to what was stricken from it, and the changes made in the subsequent paragraphs of the bill. It is not too much to say that the amendments materially changed the substance and narrowed the scope of the bill from what it was when first filed, and really reduced the claim made to redeem the stock from the pledge of 1871. No question is here made as to the right of the complainant so to amend his bill, though it may be noted that, with the answer filed to the amended bill, there are the same demurrers as were

interposed to the bill as first filed, and in addition other grounds of demurrer, one of which is "that the bill, as amended, makes an entirely different case from that made by the original bill."

If the bill in the state court had not been amended after it was filed, perhaps there might be some difficulty in pointing out substantial differences between it and the bill in the case at bar. But, however that may be, the question is, are the two bills in substance the same, and by what rule or test shall that question be determined? We have already seen that the bill in the case at bar sets out a distinct pledge in the early part of the year 1875, upon a distinct agreement, which need not be repeated, and alleging a state of facts which, if true, is inconsistent with any defense of the statute of limitations, or any application of the doctrine of laches, and showing, on the face of the bill, that different testimony will be required to sustain it from that required to sustain the bill in the former suit in the state court.

In Freeman on Judgments it is said, section 259:

"The best and most invariable test, as to whether a former judgment is a bar, is to inquire whether the same evidence will sustain both the present and the former action. If this identity of evidence be found, it will make no difference that the form of action is not the same. * * * On the other hand, if different proof be required to sustain the two actions, a judgment in one of them is no bar to the other. If the evidence in a second suit, between the same parties, is sufficient to entitle the plaintiff to a recovery, his right cannot be defeated by showing any judgment against him in any action, where the evidence in the present suit would not, if offered, have altered the result."

It may be said, however, that the proof necessary to sustain the bill in the present suit would have been pertinent to defeat the defense of the statute of limitations, and the application of the doctrine of laches in the former suit in the state court; but upon what issue would such proof have been pertinent in that cause, and did the complainant tender an issue in his bill upon which such evidence could have been properly received? The supreme court of the state, in affirming the decree of the chancellor in the court below, say: "There is neither averment or satisfactory proof of any recognition on defendant Morris' part of any existing trust relation between himself and complainant between the time of the original transaction and the filing of the bill." It is manifest that such a remark cannot be made in reference to the averments of the bill in the case at bar; and, if it be correct to say there was no averment as stated in the former suit, then how can we, in this case, hold that the question presented here, by the matter of the bill in the case at bar, has passed *in rem judicatam* in the former suit in the state court?

The legal maxim that the *allegata* and *probata* must correspond and agree applies here, and, if there was no averment, then no issue, and, if no issue, there is no room for proof, and no ground upon which an estoppel can rest. Tried, then, by the test which the law furnishes, the bill in the case at bar is not, either in substance or legal effect, the same bill as that which was preferred in the former suit in the state court; and the plea, therefore, is insufficient, and it is so ordered.

I am authorized by my Brother PARDEE, who heard the case with me, to say that he concurs in holding the plea insufficient on the single ground that the suit in the state court seems to have been to enforce a different trust from the trust charged in the present bill.